UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| INGA M. FERIA, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-4837 |
| WINN-DIXIE MONTGOMERY, LLC | SECTION "R" (3) |

## **ORDER AND REASONS**

Before the Court is Defendant Winn-Dixie Montgomery, LLC's motion for summary judgment.[1] For the following reasons, the Court grants the motion.

## I.  BACKGROUND

This case arises out of an incident of alleged food poisoning.[2] Plaintiffs Inga Feria and Keyoka Smith state that, on June 3, 2016, they and their mother, Evangeline Smith, purchased whole crabs at the Winn-Dixie store on Pontchartrain Drive in Slidell, Louisiana.[3] Feria and Smith each state that the crabs were pre-cooked, but they do not know who cooked them.[4] Keyoka Smith explains that, after they returned home from the store, her mother

---

[1]  R. Doc. 36.
[2]  R. Doc. 1.
[3]  *Id.*; R. Doc. 41-4 at 8-12; R. Doc. 41-5 at 5-8.
[4]  R. Doc. 41-4 at 12; R. Doc. 41-5 at 8-9.

opened a crab and tasted it.[5] According to Feria and Smith, their mother took a few bites of the crab and said that it tasted funny and smelled funny.[6] Feria testified that she found that the crab smelled funny.[7] Keyoka Smith similarly testified that the crab had a foul odor.[8] The family stopped cooking, and plaintiffs' mother did not eat anything else that day.[9] The following day, Feria and Smith state that their mother felt ill and appeared to have a fever.[10]

According to plaintiffs, Feria and Keyoka Smith took their mother to the emergency room on June 10, 2016, after she was found shaking in her bed.[11] Evangeline Smith's doctor, David Powers, testified that Ms. Smith tested positive for aeromonas hydrophilia.[12] Dr. Powers explained that aeromonas is an uncommon waterborne bacteria found in contaminated water.[13] Dr. Powers is a nephrologist and was treating Ms. Smith for end-stage renal disease.[14] He testified that Ms. Smith was immunocompromised and was frequently in the hospital because of infection.[15] But Dr. Powers

---

[5] R. Doc. 41-5 at 13.
[6] R. Doc. 41-4 at 20-21; R. Doc. 41-5 at 13-14.
[7] R. Doc. 41-4 at 21.
[8] R. Doc. 41-5 at 15.
[9] R. Doc. 41-4 at 22; R. Doc. 41-5 at 16.
[10] R. Doc. 41-4 at 24; R. Doc. 41-5 at 18.
[11] R. Doc. 41-1 at 1; R. Doc. 41-4 at 29-31.
[12] R. Doc. 41-9 at 7-8.
[13] *Id.* at 9-10.
[14] *Id.* at 7, 12, 26; R. Doc. 41-11 at 1.
[15] R. Doc. 41-9 at 14.

opines that Ms. Smith acquired the aeromonas infection from contaminated water in the crabmeat she consumed before her hospitalization.[16]

On May 10, 2017, Evangeline Smith filed a complaint asserting that she became ill after consuming tainted crabmeat purchased from defendant's store.[17] The complaint alleges that the crabmeat was unwholesome and unreasonably dangerous, and that defendant failed to act with reasonable prudence in the selection and preparation of the crabs.[18] Ms. Smith passed away in June 2017.[19] Her surviving children, Inga Feria, Keyoka Smith, and James Smith, Jr., were substituted as plaintiffs in this suit.[20] The Court has jurisdiction based on complete diversity of citizenship.[21] Defendant now moves for summary judgment.[22]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

---

[16] R. Doc. 41-11 at 2.
[17] R. Doc. 1 at 2 ¶ 5.
[18] *Id.* at 2 ¶¶ 5-10.
[19] R. Doc. 22.
[20] *Id.*
[21] R. Doc. 1; R. Doc. 14; R. Doc. 22.
[22] R. Doc. 36.

*Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing

4

that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

To recover for food poisoning under Louisiana law, a plaintiff must "prove the product was in a deleterious condition when purchased and

5

caused his illness." *Simmons v. Brookshire Grocery Co.*, 194 So. 3d 653, 656 (La. App. 2 Cir. 2016); *see also Landreneu v. Copeland's Cheese Cake Bistro, LLC*, 7 So. 3d 703, 706 (La. App. 5 Cir. 2009). A plaintiff must also demonstrate negligence on the part of a defendant grocery store. *See Simmons*, 194 So. 3d at 656; *Ard v. Kraft, Inc.*, 540 So. 2d 1172, 1177-78 (La. App. 1 Cir. 1989). The Louisiana Supreme Court held that a food provider "has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food." *Porteous v. St. Ann's Café & Deli*, 713 So. 2d 454, 457 (La. 1998).

## A. Negligence

Even assuming that the crabs were in deleterious condition and caused Evangeline Smith's illness, plaintiffs fail to offer any evidence that defendant acted negligently with respect to the crabs. Plaintiffs argue that defendant should have known of the presence of bacteria in the crabmeat.[23] But this assertion is unsupported by evidence. *See Ard*, 540 So. 2d at 1177 (explaining that "[a] non-manufacturing seller, such as a grocery store, is not presumed to have knowledge of a defect in a product"). Plaintiff's expert, Dr. Powers, testified that aeromonas bacteria is very uncommon.[24] There is no evidence

---

[23] R. Doc. 41 at 10.
[24] R. Doc. 41-9 at 8-9.

that defendant received prior complaints about food poisoning related to its seafood. *See Cain v. Winn-Dixie La. Inc.*, 757 So. 2d 712, 715 (La. App. 1 Cir. 1999) (finding that plaintiff failed to meet her burden of demonstrating that defendant was negligent in its preparation of a cake, in part because the record was devoid of evidence as to how often hair was observed in defendant's baked goods). Nor is there any indication in the record that defendant was otherwise aware of a danger of contamination from aeromonos bacteria.

Plaintiffs do not argue that there was anything obviously wrong with the crabs that should have been noticeable to the defendant. Feria testified that she did not notice anything unusual about the crabs in the display case, and they did not appear improperly stored.[25] The undisputed facts indicate that Evangeline Smith and her daughters noticed a problem only after the crabs were opened, tasted, and smelled.[26] *See Porteous*, 713 So. 2d. at 458 (explaining that the law does "not impose upon restaurants the responsibility of dissecting every oyster in order to determine whether there is a pearl formed or forming inside each one"); *Simmons*, 194 So. 3d at 657 (stating that "there is no liability for failure to conduct a 'close' inspection").

---

[25] R. Doc. 41-4 at 12.
[26] *Id.* at 20-21; R. Doc. 41-5 at 13-14.

Moreover, plaintiffs fail to point to evidence that defendant followed improper procedures. Catherine DeLouise, the store merchandise manager at defendant's store on Pontchartrain Drive, testified as to defendant's practices.[27] DeLouise explained that, when crabs arrive at the store, the seafood manager immediately checks them to ensure they look fresh, and then puts them in the cooler or displays them on ice.[28] DeLouise further testified that there is a thermometer in the seafood display case that is monitored three times a day to keep the temperature in the seafood display case at an appropriate level.[29] Plaintiffs Feria and Keyoka Smith each testified that the crabs they purchased at defendant's store were sitting on ice.[30] There is no evidence that defendant was responsible for cooking the crabs.[31] Plaintiffs do not identify any additional procedures that a reasonable food provider would have followed to prevent bacterial contamination.

Plaintiffs contend that there was no warning on the packaging in which defendant wrapped the crabs.[32] Defendant offers evidence that its boiled crab labels included safe handling instructions, and that it posted an advisory

---

[27] R. Doc. 41-12 at 4, 7.
[28] *Id.* at 18-19.
[29] *Id.* at 20.
[30] R. Doc. 41-4 at 12; R. Doc. 41-5 at 8.
[31] R. Doc. 41-4 at 12; R. Doc. 41-5 at 8.
[32] R. Doc. 41 at 9.

on the seafood display case about the dangers of consuming undercooked seafood.[33] But the existence of warnings is not a material issue of fact in this case. Plaintiffs' complaint does not include a claim for failure to warn and does not mention warnings.[34] Moreover, as outlined above, plaintiffs have not shown that defendant "knew or should have known of [a] defect" in the crabs that it had a duty to warn consumers about. *See Simeon v. Doe*, 618 So. 2d 848, 852 (La. 1993). Nor do plaintiffs explain what kind of warning defendant should have provided.

Because plaintiffs offer no evidence that defendant acted unreasonably in handling the crabs, the Court finds no genuine issue of material fact as to defendant's negligence.

### B. Request for Additional Discovery

Plaintiffs argue that summary judgment is inappropriate under Federal Rule of Civil Procedure 56(d) because they have not yet received various records from defendant.[35] Although Rule 56(d) motions for additional discovery are broadly favored, a requesting party is not entitled to relief if it has not diligently pursued discovery. *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014). This case is set for trial on

---

[33] R. Doc. 51-3.
[34] R. Doc. 1.
[35] R. Doc. 41 at 10-12.

March 12, 2018. The Court has already granted one extension of the discovery deadline, and the extended deadline to complete discovery has passed.[36] Plaintiffs "did not move to compel production of these documents during the discovery period—the first time [they] sought judicial assistance in obtaining these documents was in response to [defendant's] summary judgment motion." *Jacked Up, LLC v. Sara Lee Co.*, 854 F.3d 797, 816 (5th Cir. 2017). The Court finds that plaintiffs have not shown that they diligently pursued discovery, and they are not entitled to additional time under Rule 56(d). *See id.*

Even if plaintiffs could demonstrate their diligence, the Court finds that additional discovery is "not likely to produce the facts needed by the plaintiff[s] to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). Plaintiffs' counsel declares that records of the temperature of the seafood display case, security camera footage of the seafood case, and seafood receiving records are relevant to whether defendant negligently handled the crabs, and to defendant's knowledge of the harmful condition of the crabs.[37] But plaintiffs fail to "set forth a plausible basis for believing that specified facts, susceptible

---

[36] R. Doc. 28.
[37] R. Doc. 41-14 at 2.

10

of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Prospect Capital Corp. v. Mutual of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016) (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). There is no basis in the record to believe that the seafood display case was kept at an unsafe temperature. Plaintiffs Feria and Keyoka Smith testified that the crabs they purchased were sitting on ice in the display case.[38] Nor is there evidence that defendant received other complaints of food poisoning related to its seafood. Plaintiffs' "vague assertions that discovery will produce needed, but unspecified, facts" are insufficient to warrant postponing summary judgment. *Washington*, 901 F.2d at 1285.

Plaintiffs also argue that they are entitled to an adverse presumption against defendant because defendant deleted security footage of the area in front of the seafood case.[39] The "Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of bad faith or bad conduct." *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005) (internal quotations omitted). Bad faith "generally means destruction

---

[38] R. Doc. 41-4 at 12; R. Doc. 41-5 at 8.
[39] R. Doc. 41 at 12.

for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). As an initial matter, plaintiffs have not shown that defendant had notice that the security footage was relevant to the litigation before it was destroyed. *See id.* Keyoka Smith testified that, in July 2016, she and her mother spoke to somebody in the seafood department about the food they had bought.[40] In emails provided by plaintiffs, defendant's counsel represents that the security footage was automatically recorded over before defendant received notice of Evangeline Smith's claims.[41] There is no evidence in the record as to defendant's security footage retention policy, and it is not clear that defendant still possessed video from early June 2016 in July 2016.

Moreover, plaintiffs offer no evidence that the video footage was destroyed in bad faith. Nor do they explain what adverse evidence the security footage could contain. Plaintiffs' counsel asserts that the security footage is relevant to whether defendant negligently handled and stored the crabs, and to the harmful condition of the crabs.[42] But the evidence in the record indicates that there was nothing visibly wrong with the crabs in the

---

[40] R. Doc. 41-5 at 27-28.
[41] R. Doc. 41-13 at 2.
[42] R. Doc. 41-14 at 2.

seafood display case.[43] The recording-over of security footage does not warrant an adverse presumption against defendant.

Because plaintiffs have failed to show a genuine issue of fact as to defendant's negligence, defendant is entitled summary judgment.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiffs' complaint is DISMISSED.

New Orleans, Louisiana, this 22nd day of February, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[43] R. Doc. 41-4 at 12.